### In re: Charles Michael HARMON, Debtor.

### Charles Michael Harmon, Plaintiff–Appellant,

### v.

### Donald Kobrin, Defendant–Appellee.

### No. 00–15130.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 2000

Filed May 9, 2001

---

Helga A. White, Law Offices of Helga A. White, Auburn, California, for the appellant.

Mark A. Serlin, Law Offices of Mark A. Serlin, Sacramento, California, for the appellee.

Before: B. FLETCHER, O'SCANNLAIN, and GOULD, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge:

We must decide whether the bankruptcy court was correct to give preclusive effect to an issue raised in a prior state court action. Because we conclude that the state court's treatment of the issue in question does not satisfy California's threshold requirements for the application of collateral estoppel, we reverse and remand for a nondischargeability proceeding.

## BACKGROUND

Donald Kobrin, a physician, and Charles Harmon, a pharmacist, worked at the same hospital in Lodi, California. Harmon invested in ostriches through one of his former employees, Rhonda de la Cruz, who, together with John Lucas, operated Lucas Ostrich Industries (Lucas Ostrich), an ostrich ranch. At de la Cruz's prompting, Harmon spoke to Kobrin about Harmon's ostrich investments. Kobrin and Harmon formed a partnership, Kimnod Ostriches (Kimnod), and together purchased a number of ostriches and ostrich chicks. The partnership contracted with Lucas Ostrich to board the birds and to represent Kimnod in ostrich sales to third parties.[1]

Kobrin's relationship with Harmon and Lucas Ostrich soured. He sued Harmon, Lucas Ostrich, de la Cruz, and Lucas in California Superior Court, alleging, among other things, conversion and contract violations and seeking, in part, recission of contracts involving the Kimnod partnership, restitution, and dissolution of the partnership. All defendants defaulted, and the state court entered judgment against Harmon, Lucas Ostrich, and Lucas. The court ordered, among other things, recission of the contracts and of the Kimnod partnership agreement, and restitution in the amount of $293,456.11, plus interest and costs. The court held all defendants jointly and severally liable for the money judgment.

After the state judgment became final, Harmon filed for Chapter 11 bankruptcy protection. Kobrin then filed an adversary action, seeking to have the state judgment debt adjudged nondischargeable under the fraud exception, 11 U.S.C. § 523(a)(2)(A).[2] Harmon filed a motion to dismiss, and Kobrin filed a cross-motion for summary judgment. Kobrin based his motion for summary judgment on the ar-

---

1. There is some dispute as to whether the agreement was for Lucas Ostrich to sell the Kimnod Ostriches' eggs and progeny or rather to sell interests in some of the birds themselves. The dispute is not relevant to our resolution of this case.

2. The fraud exception makes nondischargeable any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by … false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

gument that the state court default judgment was preclusive of the issue of whether Harmon had committed fraud under § 523(a)(2)(A). The bankruptcy court granted summary judgment to Kobrin, declaring the debt nondischargeable. Harmon appealed to the district court, which affirmed the bankruptcy court's judgment. Harmon now appeals the district court's order.[3]

### STANDARD OF REVIEW

■■■ We review the district court's decision on appeal from the bankruptcy court de novo, without giving deference to the district court's conclusions. *Preblich v. Battley,* 181 F.3d 1048, 1051 (9th Cir.1999). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Id.* In reviewing the bankruptcy court's grant of summary judgment, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the substantive law. *Parker v. Community First Bank (In re Bakersfield Westar Ambulance, Inc.),* 123 F.3d 1243, 1245 (9th Cir.1997). No questions of fact are at issue in this appeal; the parties disagree only about whether the bankruptcy court correctly applied California preclusion law. Thus, our review is entirely de novo.

### DISCUSSION

■■■ Principles of collateral estoppel apply to proceedings seeking exceptions from discharge brought under 11 U.S.C. § 523(a). *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued. *Gayden v. Nourbakhsh (In re Nourbakhsh),* 67 F.3d 798, 800 (9th Cir.1995) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)).

■■■ In California, "[c]ollateral estoppel precludes relitigation of issues argued and decided in prior proceedings." *Lucido v. Superior Court,* 51 Cal.3d 335, 272 Cal. Rptr. 767, 795 P.2d 1223, 1225 (1990) (in bank). California courts will apply collateral estoppel only if certain threshold requirements are met, and then only if application of preclusion furthers the public policies underlying the doctrine. *See id.* at 1225, 1226. There are five threshold requirements:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Id.* at 1225. "The party asserting collateral estoppel bears the burden of establishing these requirements." *Id.*

There is no dispute concerning the fourth and fifth requirements. Harmon was a defendant in Kobrin's state court action, and, because Harmon failed to file a

---

**3.** The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b). Following the bankruptcy court's entry of judgment, Harmon filed a timely notice of appeal to the district court, which had jurisdiction under 28 U.S.C. § 158(a). After the district court entered its order affirming the bankruptcy court's judgment, Harmon timely appealed. We therefore have jurisdiction under 28 U.S.C. §§ 158(d), 1291.

timely appeal, the state trial court's judgment was final before Kobrin brought his nondischargeability action.

▇▇▇▇ In addition, the issue in the bankruptcy litigation was identical to at least one issue raised in the state court proceeding. In order to establish that a debt is nondischargeable under § 523(a)(2)(A), a creditor must establish five elements by a preponderance of the evidence:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir.2000). In his state court complaint, Kobrin adequately alleged facts that would satisfy the five elements under § 523(a)(2)(A). Kobrin requested dissolution of the partnership agreement in part because: Harmon was under a fiduciary duty and a duty of trust and good faith to Kobrin; Harmon "failed to disclose material facts with the intent to deceive Kobrin so as to induce him to invest substantial monies and to forbear from suit"; Kobrin

justifiably relied on Harmon's "representations"; and Kobrin suffered actual damages "as a direct and proximate result of" Harmon's failure to disclose.[4]

The critical questions, therefore, are whether Kobrin has established that the issue of Harmon's allegedly fraudulent conduct was "actually litigated" in the state court proceeding and whether its resolution was "necessary" for the state court's judgment. After careful review of the record, we conclude that under California law, the issue was not "necessarily decided" in the state court litigation. Neither was the issue "actually litigated." For these reasons, the bankruptcy court's grant of summary judgment was in error.

▇▇▇▇ The mere fact that Kobrin obtained a judgment by default does not, in itself, foreclose the possibility that the resolution of some issues in the litigation would later have preclusive effect. In *Williams v. Williams (In re Williams' Estate)*, 36 Cal.2d 289, 223 P.2d 248 (1950) (in bank), the California Supreme Court held that "[t]he fact that [a] judgment was secured by default does not warrant the application of a special rule. 'A default judgment is an estoppel as to all issues necessarily litigated therein and determined thereby exactly like any other judgment.'" *Id.* at 252 (quoting *Horton v. Horton*, 18 Cal.2d 579, 116 P.2d 605, 608 (1941) (in bank)).[5]

---

**4.** A debtor's failure to disclose material facts constitutes a fraudulent omission under § 523(a)(2)(A) if the debtor was under a duty to disclose and the debtor's omission was motivated by an intent to deceive. *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089–90 (9th Cir.1996).

**5.** *Williams' Estate* states that for an issue in a default judgment to have collateral estoppel effect, the issue must have been "necessarily litigated" in the action resulting in the default judgment. *See In re Williams' Estate*, 223 P.2d at 252. Subsequent cases have made it clear that the "necessarily litigated" require-

ment imposes two separate conditions: the issue must have been "actually litigated" and it must have been "necessarily decided" by the default judgment. *See Lucido*, 272 Cal. Rptr. 767, 795 P.2d at 1225.

Since *Williams' Estate*, the California Supreme Court does not appear to have revisited the question of the preclusive effect of issues raised in litigation which results in a default judgment. We interpret *Williams' Estate* through the lens of California preclusion law as it has developed since that case was decided. As we read *Williams' Estate*, the case contains a notice requirement not included among the five threshold conditions

However, the *Williams' Estate* Court placed two limitations on this rule. Reviewing past cases, the court first noted that the rationale behind finding defendants estopped by default judgments is that a defendant who is served with a summons and complaint but who fails to respond " 'is presumed to admit all the facts which are well pleaded in the complaint.' " *Id.* at 252 (quoting *Brown v. Brown,* 170 Cal. 1, 147 P. 1168, 1170 (1915)). The court noted, however, that this rationale is inapplicable in cases in which the defendant is unaware of the litigation: "Where there is a complete lack of knowledge on the part of a defendant of the action, it would be unreasonable to hold that the judgment '... becomes, in effect, a contract between the parties that the judgment shall be final with respect to everything properly embraced within the allegations of the complaint and in the prayer for relief.' " *Id.* at 253 (quoting *Brown,* 147 P. at 1170). Thus, the court held that a defendant may be precluded from relitigating issues raised in a complaint on which a default judgment was granted only if the defendant "has been personally served with summons or has actual knowledge of the existence of the litigation."[6] *Id.* at 254.

The second limitation concerns which issues are "actually litigated" in actions resulting in default judgments. The *Williams' Estate* Court limited the principle that a defaulting defendant " 'is presumed to admit all the facts which are well pleaded in the complaint' " by allowing an issue to have preclusive effect "only where the record shows an express finding upon the allegation" for which preclusion is sought. *Id.* at 252 (quoting *Brown,* 147 P. at 1170), 254. Thus, a court's silence concerning a pleaded allegation does not constitute adjudication of the issue. *See id.* at 253 ("[W]here the complaint [in a divorce action] alleges certain property to belong to the community, the court's silence cannot '... be construed as an adjudication that the property was community.' " (quoting *Paduveris v. Paris,* 213 Cal. 169, 1 P.2d 986, 988 (1931))); *see also People v. Sims,* 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321, 331 (1982) (stating that an issue is "actually litigated" when it is properly raised by a party's pleadings or otherwise, when it is submitted to the court for determination, and when the court actually determines the issue).

In this case, while Harmon was not personally served in the state court action, he had actual knowledge of the litigation.[7] However, the state court made

set forth in *Lucido. See infra* at 1245–46. In addition, *Williams' Estate* elaborates upon what it means for an issue to be "actually litigated" in the default judgment context. *See infra* at 1246.

6. Many jurisdictions require, as a threshold requirement to the application of collateral estoppel, a showing that a party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue. *See, e.g., D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.,* 76 N.Y.2d 659, 563 N.Y.S.2d 24, 564 N.E.2d 634, 636 (1990) (stating that the two requirements of collateral estoppel are: (1) "the party seeking the benefit of collateral estoppel must prove that the identical issue was necessarily decided in the prior action and is decisive in the present action"; and (2) "the party to be precluded from relitigating

an issue must have had a full and fair opportunity to contest the prior determination"). Under California law, the presence or absence of a full and fair opportunity to litigate usually is relevant not to the threshold inquiry, *see Lucido,* 795 P.2d at 1225, but rather to the public policy inquiry, *see Vandenberg v. Superior Court,* 21 Cal.4th 815, 88 Cal.Rptr.2d 366, 982 P.2d 229, 237 (1999). *See generally Lucido,* 272 Cal.Rptr. 767, 795 P.2d at 1225–26 (describing threshold and public policy inquiries which are prerequisites to the application of collateral estoppel). *Williams' Estate*'s notice requirement makes the full and fair opportunity showing a part of the threshold inquiry in the context of default judgments.

7. Kobrin served Harmon by leaving a copy of the summons and complaint with Harmon's

no express finding concerning Harmon's allegedly fraudulent actions.[8] *Cf. In re Williams' Estate,* 223 P.2d at 254 (noting prior case in which default judgment was preclusive of issues raised in complaint where court granting default judgment found that " 'all the allegations of the complaint are true, and that they are sustained by testimony free from all legal exceptions' " (quoting *Maxwell v. Maxwell,* 66 Cal.App.2d 549, 152 P.2d 530, 531 (1944))). Because there was no express finding in respect to fraud (or anything else for that matter), we cannot conclude that the state court considered and decided the issue.

Under *Williams' Estate,* then, we cannot conclude that the issue was actually litigated.

 *Williams' Estate* imposed the express finding requirement in order to ensure that the court in the prior litigation actually decided the issue. However, the express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue: As a conceptual matter, if an issue was necessarily decided in a prior proceeding, it was actually litigated.[9] However, in this case, the state court could have entered a default judgment against Harmon without finding that he had committed fraud.[10] Thus, the issue

---

employer and mailing Harmon a copy. Harmon was away on vacation at the time. However, Harmon returned in time to participate in the litigation. His default resulted not from ignorance of the litigation, but, according to his affidavit, from his attorney's failure to adequately represent his interests. Harmon does not allege that he was improperly served.

8. The state court made no express findings whatsoever, stating simply that upon consideration of the evidence it "appear[ed] by clear and convincing evidence that Kobrin is entitled to judgment against Defendants."

9. The converse proposition, by contrast, is not true. An issue may actually have been litigated without its determination having been necessary to the court's decision.

10. Kobrin did seek relief under California Corporations Code § 15039, which provides for the rights of partners entitled to rescind the partnership agreement on the ground of fraud or misrepresentation. *See* Cal. Corp. Code § 15039 (West 1991), *repealed by* 1996 Cal. Stat., c. 1003 (A.B.583), § 1.2 (effective Jan. 1, 1999). The state court granted relief under this section. There are very few cases interpreting § 15039 and none that address the meaning of "fraud" and "misrepresentation." However, it appears that the state court could have granted Kobrin relief under § 15039 even without a finding that Harmon had committed fraud in the sense necessary to satisfy the requirements of 11 U.S.C. § 523(a)(2)(A). For example, California partnership law recognizes the doctrine of "con-

structive fraud." *See, e.g., Edmunds v. Valley Circle Estates,* 16 Cal.App.4th 1290, 20 Cal. Rptr.2d 701, 707 (1993).

> Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship.... [A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud. Also, a careless misstatement may constitute constructive fraud even though there is no fraudulent intent.

*Assilzadeh v. Cal. Fed. Bank,* 82 Cal.App.4th 399, 98 Cal.Rptr.2d 176, 186 (2000) (internal quotation marks and citations omitted). Here, Kobrin alleged that Harmon had a fiduciary duty to him and failed to disclose material facts. The state court could have granted Kobrin relief under § 15039 because it found that Harmon had engaged in constructive fraud. But such a finding would be insufficient to establish fraud under § 523(a)(2)(A), because under § 523(a)(2)(A), the debtor must have intended to deceive the creditor, but in the case of "constructive fraud ... it is not necessary to prove deliberate or intentional fraud." *Edmunds,* 20 Cal.Rptr.2d at 707 (internal quotation marks and citation omitted) (omission in original). The party asserting

was not necessarily decided by the prior proceeding. *Cf. Baldwin v. Kilpatrick (In re Baldwin),* 249 F.3d 912 (9th Cir.2001) (holding that although the state court did not make an express finding on an issue in an action which resulted in a default judgment, the issue was "actually litigated" because it was "necessarily decided").

The issue of whether Harmon committed fraud was neither actually litigated nor necessarily decided in the state court action. The state default judgment therefore cannot be used to preclude the issue of fraud in subsequent proceedings. The bankruptcy court was wrong to conclude that the issue of whether Harmon committed fraud within the meaning of § 523(a)(2)(A) was precluded by the state court judgment.[11]

### CONCLUSION

The issue of whether Harmon committed fraud against Kobrin within the meaning of 11 U.S.C. § 523(a)(2)(A) was neither "necessarily decided" by nor "actually litigated" in the state court proceeding. Under California law, Harmon is not precluded from contesting the issue in Kobrin's adversary action. We therefore reverse and remand to the district court with instructions to remand to the bankruptcy court for a nondischargeability hearing on Kobrin's claim.

**REVERSED AND REMANDED.**

---

collateral estoppel has the burden of showing that the doctrine's threshold requirements are met. *Lucido,* 272 Cal.Rptr. 767, 795 P.2d at 1225. Kobrin has failed to show that the state court granted judgment because it found that Harmon had committed actual rather than constructive fraud. Therefore, Kobrin has not demonstrated that the issue of whether Harmon committed actual fraud was necessarily decided by the state court.

**11.** Since we hold that the state court judgment is not entitled to preclusive effect because it failed to satisfy California's threshold requirements, we do not consider whether the application of collateral estoppel would further the policy interests underlying the doctrine. *Cf. Lucido,* 272 Cal.Rptr. 767, 795 P.2d at 1226.